UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
Luis Rodriguez,

       *Petitioner*,

     v.

UNITED STATES OF AMERICA,

       *Respondent.*
---------------------------------X

**MEMORANDUM & ORDER**

14-CV-6134(KAM)

**KIYO A. MATSUMOTO, United States District Judge**

      On August 2, 2010, petitioner Luis Rodriguez ("Mr. Rodriguez" or "petitioner") was sentenced by Judge David Trager to life imprisonment pursuant to a judgment of conviction imposed on November 14, 2006 in the United States District Court for the Eastern District of New York.  (Judgment, at 1, 05-cr-00153, ECF No. 221; Jury Verdict, at 1, 05-cr-00153, ECF No. 93.)  Presently before the court are Mr. Rodriguez's petition to vacate his sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"), his two motions to amend his petition, his motion for disqualification, his motion for disclosure, and his motion for discovery.  For the reasons set forth below, Mr. Rodriguez's petition is without merit, and his motions are also without merit.  Accordingly, his petition is DENIED, and his remaining motions are DISMISSED.

1

## Background

In September 2000, Mr. Rodriguez, cooperating witness Carlos Medina ("CW Medina"), German Polanco, Manuel Santos and Alex Core participated in a double homicide.[1] *United States v. Santos*, 2010 WL 2985913, at *1 (E.D.N.Y. July 27, 2010).  Mr. Polanco believed two men, "Ronnie" and "El Renco," stole $316,000 of cocaine-sale proceeds from him, and directed CW Medina to hire a hitman to kill the duo.  (*Id.*)  Mr. Rodriguez volunteered to supervise the shooting on behalf of Mr. Polanco and acted as Mr. Polanco's go-between in organizing the shooting.  (*Id.*)  Mr. Rodriguez supplied CW Medina with an address Mr. Rodriguez believed to be "Ronnie's" and "El Renco's" to execute the murder.  (Luis Rodriguez Affidavit in Support of His Motion to Vacate, Exhibit 2-C, Grand Jury Transcript ("Grand Jury Tr."), at 33-34, ECF No. 1-4.)[2]

Mr. Medina hired two other men, Manuel Santos and Alex Core, for the shooting and, on September 26, 2000, the three

---

[1]    On January 4, 2001, four months after the double homicide, Mr. Rodriguez was arrested in connection with a separate and unrelated heroin case. Carlos Medina, who also participated in the double-homicide, was arrested on the same heroin charges a month earlier in December 2000. Medina was a cooperator in the separate heroin case and later pled guilty to his role in the two homicides that are the subject of Mr. Rodriguez's current petition. Mr. Rodriguez went to trial on the heroin case and was convicted by a jury in the Eastern District of New York on July 24, 2001. Mr. Medina did not testify in Mr. Rodriguez's heroin trial. On December 16, 2004, the Second Circuit reversed Rodriguez's conviction on the grounds of insufficient evidence. (*United States v. Rodriguez,* 392 F.3d 539 (2d Cir. 2004).)
[2]    Citations to the parties' briefs and to the record refer to ECF and PDF pagination.

2

drove to "Ronnie's" residence in Queens to wait for "Ronnie" and
"El Renco." *Santos*, 2010 WL 2985913, at *1.  Two other
individuals, Wilber Garces and his fourteen-year-old stepson
Edgardo Bryan, left the house, walked over to the parking lot,
and entered their car.  (*Id.* at *2.)  As Mr. Garces and his
stepson pulled out of the parking lot, Mr. Santos blocked their
car with his SUV and Messrs. Santos and Core jumped out of the
SUV and fired several rounds into the car.  (*Id.*)  Rather than
"Ronnie" and "El Renco," the three had mistakenly killed Mr.
Garces and his fourteen year-old step-son.  (*Id.*)  Mr. Medina
later called Messrs. Polanco and Rodriguez to confirm the
killings.  (Gov. Sentencing Letter at 2-3, 05-CR-00153, ECF No.
212-2.)

In December 2000, Mr. Medina was arrested for
possession of two kilograms of cocaine as a result of an
investigation conducted by the New York Police Department
("NYPD") and the Drug Enforcement Agency ("DEA"). During the
arrest, documents related to Mr. Rodriguez were found in Mr.
Medina's vehicle.  (Grand Jury Tr. at 32.)  Mr. Medina agreed to
cooperate with the government and provided information about Mr.
Rodriguez and the other participants in the homicide conspiracy.
(*Id.* at 32-34.)  The government analyzed several phone calls
made by Mr. Medina from a pay phone to Mr. Rodriguez's phone on
the day of the murders, including a call made approximately

fifteen minutes after the murders at 8:30 pm.  (*Id.* at 38-39.)

During one of their conversations, Mr. Rodriguez informed Mr.

Medina that he had confirmed the killings himself by driving by

the crime scene and seeing police cars.  (Gov. Sentencing Letter

at 2-3, 05-cr-00153, ECF No. 212-2.)

## I.   Arrest, Indictment, and Pre-Trial Proceedings

On January 26, 2005, DEA Special Agent Bryan Iula

("Special Agent Iula") submitted a complaint and affidavit in

support of an arrest warrant, that Magistrate Judge Roanne Mann

authorized the same day.  (*See generally* Complaint and Affidavit

in Support of Arrest Warrant, Docket No. 05-cr-00153, ECF No. 1;

Arrest Warrant, Docket No. 05-cr-00153, ECF No. 2.)  On February

15, 2005, Magistrate Judge Cheryl L. Pollak appointed David

Gordon, Esq. ("Mr. Gordon") as Mr. Rodriguez's first defense

attorney.  (Appointment of Attorney David Gordon, at 1, 05-cr-

00153, ECF No. 3.)  During Mr. Rodriguez's detention hearing

before Magistrate Judge Pollak, Mr. Rodriguez argued for the

first time that the Assistant United States Attorney and the

court did not have the jurisdiction to bring charges against him

because there was "no jurisdiction that was [] even brought

forward to say that this is cocaine, violating interstate

commerce . . . [a]s the Court is aware, okay, sixty percent of

the cocaine in New York is probably created here."[3]  (February
15, 2005 Detention Hearing, "Detention Hearing", at 4, 05-cr-
00153, ECF No. 253.)

Magistrate Judge Pollak denied Mr. Rodriguez's attempt
to have the complaint dismissed, stating that the government had
information "involving the homicides which is corroborated by
independent evidence.  We've got videotapes and phone calls, and
(2) a statement by a witness who although you tell me he's not
credible . . . I can't throw out the complaint because on its
face, there's probable cause."  (*Id.* at 16.)  Additionally,
Magistrate Judge Pollak found that the Second Circuit's decision
to reverse Mr. Rodriguez's conviction for a separate and
unrelated drug conspiracy, also involving Mr. Medina, did not
have an impact on the instant complaint because the government
represented that the witness in the current case was not
involved in Mr. Rodriguez's previous trial.[4]  (*Id.* at 11, 16.)

---

[3]     Mr. Rodriguez made this statement on his own behalf after being
informed by Magistrate Judge Pollak that his statement would be entered into
the record.  After Mr. Rodriguez continued to insist that he make a
statement, Mr. Gordon acquiesced.  (February 15, 2005 Detention Hearing,
"Detention Hearing", at 3-4, 05-cr-00153, ECF No. 253.)
[4]     The Second Circuit reversed the district court's earlier conviction of
Mr. Rodriguez on possession with intent to distribute heroin and conspiracy
to distribute heroin, finding that there was insufficient evidence to support
both an aiding and abetting theory and a constructive possession theory of
liability.  *See United States v. Rodriguez*, 392 F.3d 539, 545-49 (2d Cir.
2004).  However, the circuit's holding had no bearing on the witness
statement at issue in Mr. Rodriguez's February 15, 2005 detention hearing, as
that witness did not testify in Mr. Rodriguez's drug conspiracy trial.
(Detention Hearing at 14.)

On February 25, 2005, the grand jury returned an indictment against Mr. Rodriguez on six counts: one count of conspiracy to distribute and possession with intent to distribute five kilograms or more of a substance containing cocaine, in violation of 21 U.S.C. Section 841(a)(1); two counts of engaging in a "continuing criminal enterprise" for "knowingly and intentionally kill[ing], counsel[ing], command[ing], induce[ing], procur[ing] and caus[ing] the intentional killing of another person" for the murders of Wilber Garces and Edgardo Bryan, in violation of 21 U.S.C. Section 848(e)(1)(A), 18 U.S.C. Sections 2 and 3551 *et seq.*; one count of knowingly and intentionally possessing a firearm in furtherance of a drug trafficking crime and knowingly and intentionally using and carrying a firearm during and in relation to such a drug trafficking crime, in violation of 18 U.S.C. Sections 924(c)(1)(A)(iii), 2 and 3551 *et seq.*; and two counts of knowingly and intentionally causing the death of a person through the use of a firearm as defined in 18 U.S.C. Section 1111(a) in that petitioner, with malice aforethought, unlawfully killed Wilber Garces and Edgardo Bryan, in violation of 18 U.S.C., Sections 924(j)(1), 2 and 3551 *et seq.* (*See generally* Indictment, 05-cr-00153, ECF No. 6.)

On March 4, 2005, Mr. Rodriguez pleaded not guilty on all counts before Judge David Trager. (March 4, 2005

Arraignment, at 1, 05-cr-00153, ECF No. 8.)  On May 18, 2005,
Mr. Rodriguez, in the presence of his counsel, Mr. Gordon, and
learned counsel, Richard Levitt, Esq. ("Mr. Levitt"), made a
motion alleging that the court did not have jurisdiction and
stated that he wished to represent himself.  (May 18, 2005
Status Conference, at 4-11, 05-cr-00153, ECF No. 9.)  Judge
Trager denied Mr. Rodriguez's motion and scheduled another
conference on June 20, 2005, to allow Mr. Rodriguez more time to
decide if he wished to represent himself.  (*Id.* at 6,11.)

        At the conference on June 20, 2005, Mr. Rodriguez
reiterated his desire to represent himself and Judge Trager
relieved Mr. Gordon as counsel.  (David Gordon Affidavit,
"Gordon Aff.", at 5, ECF No. 7.)  Before the next conference, on
July 18, 2005, Judge Trager appointed Bobbi Sternheim, Esq.
("Ms. Sternheim") to represent Mr. Rodriguez.  During the July
18, 2005 status conference, Mr. Rodriguez indicated that he did
not wish to have Ms. Sternheim represent him at trial, but would
consider the court's recommendation that Mr. Rodriguez allow Ms.
Sternheim to represent him for purposes of death penalty
consideration and motions.  (July 18, 2005 Status Conference, at
2-10, 05-cr-00153, ECF No. 66.)  During an August 31, 2005
status conference, Mr. Rodriguez waived his right to counsel and
stand-by counsel.  (August 31, 2005 Status Conference, at 1, 05-

cr-00153, ECF No. 16.)  Judge Trager relieved Ms. Sternheim and Mr. Rodriguez proceeded *pro se*.  (*Id.*)

On November 2, 2005, Judge Trager appointed JaneAnne Murray, Esq. ("Ms. Murray") to act as standby counsel on behalf of Mr. Rodriguez.  (Notice of Appearance for JaneAnne Murray filed November 2, 2005, at 1, 05-cr-00153, ECF No. 29.)  On the application of Mr. Rodriguez, Judge Trager appointed Joseph P. Dwyer ("Mr. Dwyer") of Investigative Resource Group to act as Mr. Rodriguez's defense investigator under the sole direction and supervision of Ms. Murray.  (Appointment of Defense Investigator Dwyer dated November 16, 2005, at 1, 05-cr-00153, ECF No. 33.)  After Mr. Dwyer refused to continue his services due to disagreements with Ms. Murray regarding how his investigative time was being spent, Judge Trager appointed James Scully ("Mr. Scully") on November 14, 2006, to act as Mr. Rodriguez's defense investigator, again under the sole direction and supervision of Ms. Murray. (Appointment of Defense Investigator Scully dated November 14, 2006, at 1, 05-cr-00153 ECF No. 92.)

## II.  Relevant Conviction and Post-Trial Proceedings

### A. <u>Changes in Appointed Counsel</u>

The trial against Mr. Rodriguez commenced on or about October 30, 2006.  (JaneAnne Murray Declaration, "Murray Decl.", ¶ 3, ECF No. 6.)  Judge Trager appointed Ms. Murray as trial

counsel for Mr. Rodriguez mid-trial, during CW Medina's cross-examination.  (*Id.*)  On November 14, 2006, Mr. Rodriguez was convicted on all six counts by the jury.  (*See* Jury Verdict, 05-cr-00153, ECF No. 93.)  On December 6, 2006, Judge Trager denied Mr. Rodriguez's request for reassignment of counsel.  (*See* Order Denying Reassignment of Counsel, 05-cr-00153, ECF No. 93.)

On September 19, 2007, Judge Trager relieved Ms. Murray as counsel and appointed Harry Batchelder, Esq. ("Mr. Batchelder") as stand-by counsel.  (September 19, 2007 Status Conference, 05-cr-00153, at 1, ECF No. 113.)  On March 24, 2009, Mr. Batchelder submitted a sentencing memorandum on behalf of Mr. Rodriguez, asserting that the court should not "stack" the sentences on counts five and six of Mr. Rodriguez's sentence, noting that "it must not escape notice that Mr. Rodriguez is forty-seven years old, with a heart condition, thus any sentence of twenty-five years or more will carry the real possibility that Mr. Rodriguez will die in jail."  (Sentencing Memorandum on Behalf of Luis Rodriguez, at 2, 05-cr-00153, ECF No. 158.)

### B. **Government Trial Team Discloses Operation Pier Pressure**

In two letters dated May 28, 2009 and March 30, 2010, the government trial team disclosed additional information to Mr. Rodriguez that it learned of after his trial.  (Brief and Appendix for Government-Appellant at 21-26, *available at* 2012 WL

1653030, *United States v. Rodriguez*, 503 F. App'x 72 (Nov. 21, 2012).)   The government trial team in Mr. Rodriguez's case became aware of information related to an Immigration and Customs Enforcement ("ICE") investigation into an unrelated investigation, named "Operation Pier Pressure," involving one of the prosecutors who initially worked on the *Rodriguez* case. (*Id.* at 21.)   The government trial team learned that Jose Guerrero and Eduardo Jaramillo Aguilar, two cooperating defendants in the Pier Pressure investigation, had provided ICE agents with information about the murder of an individual known as "Tula," who DEA agents investigating the homicides later determined to be Mr. Garces.   (*Id.*)   The government trial team disclosed two additional pieces of information to Mr. Rodriguez: first, the existence of statements and interviews of five individuals involved with Operation Pier Pressure; and second, the intention of Mr. Polanco's counsel to call an associate, Tomas Rojas Bermudes, who ultimately was not called by the defense as his purported knowledge about the murders at issue was based on hearsay and lies.   (*Id.*)

## C. <u>**Petitioner's Post-Verdict Motions Challenging Trial and Sentencing**</u>

On June 10, 2009, Mr. Rodriguez filed a *pro se* motion for a new trial pursuant to newly discovered evidence and to Rule 33 of the Federal Rules of Criminal Procedure.   (Motion for

New Trial, ¶ 1, 05-cr-00153, ECF No. 166.)  In support of his motion, Mr. Rodriguez alleged multiple *Brady/Giglio* violations, including "unconstitutional misconduct, destruction of evidence and side deals with cooperating witnesses without informing the defense or defendant of the agreement."[5]  (*Id.*)  In his supporting memorandum, Mr. Rodriguez alleged two distinct *Brady* violations: "(1) that the government improperly bolstered CW-Medinas['] trial testimony and solicited testimony it [k]new was false and (2) that the Government and CW-Medina had an undisclosed side deal regarding CW-Medina[']s testimony." (*Id.* at 11.)

On June 9, 2010, Judge Trager ordered Mr. Rodriguez to file any post-verdict motions by July 1, 2010.  (Order Dated June 9, 2010, at 1, 05-cr-00153, ECF No. 199.)  On June 24, 2010, Mr. Rodriguez, *pro se*, filed a motion to vacate his conviction pursuant to Rules 11 and 60(B) of the Federal Rules of Civil Procedure, and Rule 33 of the Federal Rules of Criminal Procedure.  (Motion to Vacate Pursuant to Rule 33 filed June 24, 2010, at 1, 05-cr-00153, ECF No. 202.)  Mr. Rodriguez made

---

[5]     *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), allow for defendants to challenge their sentence on appeal if the government suppressed evidence that would undermine the confidence in the verdict.  *See United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)) ("Thus, a *Brady* violation occurs only where the government suppresses evidence that 'could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict.'")

several allegations in his motion, including another challenge to the jurisdiction of the court on his case alleging that "the prosecution lead [sic] the witness [Agent Iula] in the false direction the prosecution needed to fabricate the non-existing jurisdiction over the crime of murder, by linking the murders to the drug activities of 'CW 1' Carlos Medina and Mr. German Polanco and others."  (*Id.* at 22.)(second alteration in original)

In July 2010, Mr. Rodriguez submitted another *pro se* motion objecting to his sentence.  (Defendant's Objection to Sentence Memorandum filed July 30, 2010, 05-cr-00153, ECF No. 218.)  Mr. Rodriguez objected to his sentence on five grounds, framed by Mr. Rodriguez as the following questions: "[a] Did the Federal Government used [sic] perjury by way of perjured testimony by DEA Special Agent Brian Iula to the Grand Jury to attain the appearance of subject matter jurisdiction?;...[b] Did the Federal Government Lack Federal Legislative, Territorial, or Admiralty Jurisdiction in over the Locus Quo?;...[c] Are the Federal Government Charging instruments Fatally Defective in this Cause?;...[d] Did the Federal Government Fail to Establish Federal Interstate Commerce Nexus to this Cause?;...[e] Are Title's [sic] 18 and 21 United States Code Unconstitutional and if so do said Codes apply to Defendant?"  (*Id.* at 2.)

12

On July 26, 2010, the government submitted its
response to petitioner's *pro se* sentencing letters and the March
24, 2009 sentencing memorandum submitted by petitioner's stand-
by counsel.  (Government Sentencing Memorandum, at 1, 05-cr-
00153, ECF No. 212.)  In its response, the government noted that
Judge Trager had rejected similar claims of an alleged *Brady*
violation and perjury in *United States v. Polanco*, 510 F. App'x
10 (2d Cir. 2013), and *United States v. Santos*.  (*Id.* at 4.)
The government also included its earlier sentencing letter,
dated July 11, 2007, that addressed Mr. Rodriguez's arguments,
including his challenges to the credibility of witnesses and
allegations of perjury by Special Agent Iula.  (*See generally*
July 25, 2010 Sentencing Memorandum, 05-cr-00153, ECF No. 212-
2.)

On July 29, 2010, Judge Trager held a sentencing
hearing and sentenced Mr. Rodriguez to a term of life
imprisonment.  (Judgment, at 3, 05-cr-00153, ECF No. 221.)  On
the same day, Judge Trager denied Mr. Rodriguez's Rule 33
motions for a new trial filed in June 2009 and June 2010, *see*
05-cr-00153, ECF Nos. 165, 166, 202, Mr. Rodriguez's motion to
continue, *see* 05-cr-00153, ECF No. 210, and Mr. Rodriguez's
motion requesting a hearing, *see* 05-cr-00153, ECF No. 218.
(Order on Motion for New Trial, at 1, 05-cr-00153, ECF No. 219.)
On August 2, 2010, judgment was entered against Mr. Rodriguez;

he filed his notice of appeal on the same day.  (05-cr-00153, ECF Nos. 221, 224.)

### D. **Petitioner's Appeal**

In his appeal, Mr. Rodriguez raised four grounds for reversal: "(1) the government violated its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963); (2) there was insufficient evidence to support his convictions; (3) the district court erred in allowing him to represent himself; (4) the district court erred in denying petitioner's motion to have a witness psychiatrically evaluated; and (5) a cooperating witness perjured himself." *Rodriguez*, 503 F. App'x at 74.  The Second Circuit affirmed the judgment of conviction in all respects and denied petitioner's appeal. *Id.* at 76.  On May 28, 2013, Rodriguez filed a petition for a writ of certiorari, which was denied by the United States Supreme Court on October 7, 2013. *Rodriguez v. United States*, 571 U.S. 942 (Oct. 7, 2013).

## III. **Petitioner's Instant *Pro Se* Motion for Habeas Relief**

On October 20, 2014, petitioner filed a *pro se* motion for habeas corpus relief pursuant to 28 U.S.C. § 2255. The court, reading petitioner's motion with a lenient eye as required, construes the petition to include seven claims of ineffective assistance of counsel.  (Motion to Vacate Judgment under 28 U.S.C. Section 2255 filed October 20, 2014 ("Pet."), at 4-18, ECF No. 1.)  On October 28, 2014, the court ordered the

counsels Mr. Rodriguez referenced in his petition, Mr. Gordon
and Ms. Murray, to respond to petitioner's allegation of
ineffective assistance of counsel.  (Order to Show Cause, ¶ 1,
ECF No. 2.)  The court further ordered the government to respond
to Mr. Rodriguez's petition within sixty days of receipt of the
affidavits from Mr. Gordon and Ms. Murray.  (*Id.* ¶ 22.)

On December 9, 2014, Ms. Murray filed a declaration
responding to Mr. Rodriguez's allegations of ineffective
assistance of counsel.  (*See* Murray Decl.)  On December 15,
2014, Mr. Gordon filed a declaration responding to Mr.
Rodriguez's allegations of ineffective assistance of counsel.
(*See* Gordon Aff.)  On February 10, 2015, Mr. Rodriguez filed a
motion to disqualify five Assistant United States Attorneys
("AUSAs") and/or the office for the United States Attorney's
Office for the Eastern District of New York, alleging a conflict
of interest.  (*See generally* Motion to Disqualify U.S.
Attorney's Office for the Eastern District of New York, filed
February 10, 2015 ("Disqualify Mot."), ECF No. 8.)  On February
17, 2015, Mr. Rodriguez filed a motion for leave to amend his
petition, including a declaration and a memorandum in support.
(*See generally* Motion for Leave to Amend Filed February 17, 2015
("Amend. Mot."), ECF No. 9.)

The court directed the government to submit a written
response indicating whether it opposed Mr. Rodriguez's motions

15

to disqualify and amend.  (Dkt. Order dated February 25, 2015.)
On February 25, 2015, Mr. Rodriguez filed motions for disclosure
of grand jury transcripts and court logs of the testimony that
returned an indictment on February 25, 2005, and for assignment
of counsel.  (Motion for Disclosure and Assignment of Counsel
("Disclosure Mot."), at 5, ECF No. 10.)  On March 16, 2015, Mr.
Rodriguez filed an additional motion for discovery and
assignment of counsel.[6]  (Motion for Discovery filed March 16,
2015 ("Discovery Mot."), at 1-2, ECF No. 13.)  On June 23, 2015,
the government filed its memorandum in opposition to Mr.
Rodriguez's habeas petition, motion for leave to amend the
petition, motion to disqualify the AUSAs, and motion for
discovery.  (*See generally* Government Memorandum in Opposition
("Opp."), ECF No. 31.)  On October 1, 2015, Mr. Rodriguez filed
his reply in response to the government's opposition.  (*See
generally* Petitioner's Reply to Government's Opposition filed
October 1, 2015 ("Reply"), ECF No. 37.)  On November 6, 2015,
Mr. Rodriguez made a motion to stay the case, *see* ECF No. 43,
that this court denied.  (Dkt. Order dated November 17, 2015.)

---

[6]     Mr. Rodriguez also filed several briefs in support of a motion to
compel Mr. Gordon and Ms. Murray to answer interrogatories.  (*See* ECF Nos.
21, 22, 23, 24, 25, 26, 27, 28.)  Because petitioner's claim is without
merit, and because Mr. Gordon and Ms. Murray have already provided affidavits
describing their representations, petitioner's motions to compel Mr. Gordon
and Ms. Murray to answer interrogatories, *see* ECF Nos. 22, 26, are denied.

In a letter filed February 2, 2016, Mr. Rodriguez requested that this court "liberally interpret his pleadings and claims, and asks the Court to view these claims as an 'actual innocen[ce]' claim, because the Government attorneys violated the Indictment clause . . . ." (Petitioner's Letter filed February 2, 2015, at 1, ECF No. 48.)  On April 10, 2018, Mr. Rodriguez filed a second motion to amend his petition.  (*See* Second Motion to Amend filed April 10, 2018 ("Second Amend. Mot."), ECF No. 64.)  On April 27, 2018, this court directed the government to respond.  (Dkt. Order, dated April 27, 2018.)  The government filed its response on June 28, 2018.  (*See* Government Memorandum in Opposition to Petitioner's Second Motion to Amend filed June 28, 2018 ("Second Opp."), ECF No. 69.)  On August 8, 2018, Mr. Rodriguez filed his reply to the government's second opposition memorandum.  (*See* Mr. Rodriguez's Reply to Government's Opposition filed August 8, 2018 ("Second Reply"), ECF No. 73.)

### Standard of Review

"A prisoner in custody under sentence of a [federal court] claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, . . . or is otherwise subject to collateral attack, may move the court which imposed

the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). The court "shall vacate and set the judgment aside" if the Court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." (*Id.* § 2255(b).) To respect the finality of criminal convictions, "a collateral attack on a final judgment in a federal criminal case is generally available under Section 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"A Section 2255 petition may not be used as a substitute for a direct appeal." *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)). A claim "may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). Therefore, a petitioner's claims not raised on

18

direct review, "with the exception of his ineffective assistance of counsel claims, are 'procedurally forfeited . . . unless he can show (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence.'" *Mora v. United States*, 2010 WL 2607209, at *2 (June 29, 2010) (quoting *Sapia v. United States*, 433 F.3d 212, 217 (2d Cir. 2005)).  "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" (*Id.* at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)).)

"[A] petitioner may bring an ineffective assistance of counsel claim whether or not the petitioner could have raised the claim on direct appeal." *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003)).  However, in the Second Circuit, "a Section 2255 petitioner may not 'relitigate questions which were raised and considered on direct appeal,' including questions as to the adequacy of counsel." (*Id.* at 55 (quoting *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007)).)  Therefore, courts in the Second Circuit have applied the so-named "mandate rule" to bar claims of ineffective assistance in a Section 2255

proceeding "when the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate."  (*Id.* at 53 (citing *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009)).)

In considering the instant petition, the court "must review a *pro se* [Section 2255] petition for collateral relief 'with a lenient eye, allowing borderline cases to proceed.'" *Fleming v. United States*, 146 F.3d 88, 91 (2d Cir. 1998) (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983)).  As the "court is mindful that a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by attorneys," the court interprets Mr. Rodriguez's pleadings as raising the strongest arguments they suggest. *See Martin v. United* States, 834 F. Supp. 2d 115, 118 n.1 (E.D.N.Y. 2011).

## Discussion

### I.   Motions to Amend

On February 17, 2015, Mr. Rodriguez filed his first motion to amend his petition. (Amend. Mot. at 1.)  On April 10, 2018, petitioner filed his second motion to amend.  (Second Amend. Mot. at 1.)  Because Mr. Rodriguez's claims in his motions to amend are either procedurally barred or futile as

described below, petitioner's motions to amend are respectfully denied.

**A. <u>Legal Standard</u>**

Petitions filed under Section 2255 are subject to a one-year statute of limitations, running from "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  Mr. Rodriguez's judgment became final on October 7, 2013.  *See Rodriguez v. United States*, 571 U.S. 942 (2013).  As discussed below, Mr. Rodriguez's petition is considered timely due to the prisoner mailbox rule and is within the limitations period.  However, Mr. Rodriguez's first and second motions to amend were filed four months and more than four years, respectively, after the statute of limitations period expired.  "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim," the "limitation period would have slim significance."  *Mayle v. Felix*, 545 U.S. 644, 662 (2005).  In order for the claims in Mr. Rodriguez's motions to amend to be considered timely, each claim, respectively, must relate back to his original petition.  *See* Fed. R. Civ. P. 15(c); *see also Martin v. United States,* 834 F.Supp.2d 115, 123 (E.D.N.Y. 2011); *Delutro v. United States*, 2014 WL 4639198, at *5 (E.D.N.Y. Sept. 16, 2014).

Therefore, the court examines whether each claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see also Mayle*, 545 U.S. at 647 ("[R]elation back will be in order so long as the original and amended petitions state claims that are tied to a common core of operative facts").

In *Mayle*, "the Supreme Court limited claims in an amended petition to those that arose from the same core facts alleged in the original petition, not those related generally to petitioner's trial, conviction, or sentence." *Gibson v. Artus*, 407 F. App'x. 517, 519 (2d Cir. 2010) (summary order). Mr. Rodriguez's claims must relate back to the core operative facts of his claims for ineffective assistance of counsel as outlined within his original petition. Summarily stating that these claims relate to ineffective assistance of counsel will not suffice. *See Soler v. United States*, 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) ("[E]ven an ineffective assistance of counsel claim, when alleging a different ground for ineffective assistance, does not relate back to an earlier ineffective assistance claim."); *see also Desrosiers v. Phillips*, 2008 WL 4469594, at *7 n.5 (E.D.N.Y. Oct. 3, 2008) ("[I]t is now fairly well-established that ineffective assistance of counsel claims in the habeas context do not relate back to one another merely

22

because they both involve counsel's allegedly deficient performance"); *Veal v. United States*, 2007 WL 3146925, at *6 (S.D.N.Y. Oct. 9, 2007) ("There is a clearer line of demarcation here, where we are asked to relate an attorney's conduct at trial and the level and quality of his pre-trial communications with his client."); *Gonzalez v. United States*, 2018 WL 5023941, at *6 (S.D.N.Y. Oct. 17, 2018); *Hiers v. Bradt*, 2014 WL 6804252, at *6 (E.D.N.Y. Dec. 3, 2014).

   The court also reviews Mr. Rodriguez's claims in his motions to amend to determine if such amendments would be futile.  *See Thristino v. United* States, 379 F. Supp. 2d 510, 514 (S.D.N.Y. July 25, 2005) (quoting *Jones v. N.Y. State Div. Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999)) ("However 'a district court may properly deny leave when amendment would be futile.'").  While "leave to amend generally should be freely granted, it may be denied where there is good reason to do so, such as undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Edwards v. Fischer*, 2002 WL 31833237, at *1 (S.D.N.Y. Dec. 16, 2002) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  A proposed amendment is futile "if the proposed claim could not withstand a motion to dismiss for failure to state a claim upon which relief may be

granted." (*Id.* (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).)

## B. <u>First Motion to Amend</u>

Mr. Rodriguez asserts three proposed claims in his first motion to amend: (i) AUSA Noah Perlman and AUSA Max Minzner intentionally excluded from the Cooperation Agreement with cooperating witness Carlos Medina "the material fact that as part of the Cooperation Agreement . . . the Government will not seek the death penalty against 'CW' Carlos Medina-Torres in relation to the charges against him" and therefore Mr. Rodriguez was not able to cross-examine Medina regarding this portion of the cooperation agreement; (ii) AUSA Licha Nyiendo and AUSA Robert Capers intentionally did not provide Mr. Rodriguez "nor the defense for the petitioner Rodriguez, case[] 05-CR-153(DGT)[,] with copy of notes, documents or voice notification that 'CW' Carlos Medina-Torres had prior to the alleged conspiracy of 2000, (The Polanco Conspiracy) that 'CW' Medina had provided testimony in a State of New York trial in the shooting of a New York Police Officer [, *People v. Aparicio*, 84 N.Y. 2d 1009 (N.Y. 1994)] and that his testimony had been incredible and/or just completely false;" and (iii) Ms. Murray "had a conflict of interest, and did not disqualify herself or notify the Court of the conflict or make any attempt at correcting [the] issue of the conflict, after she was re-

assigned as full counsel, and no longer standby counsel."
(Amend. Mot. at 2.)

> ### 1. *Excluded Material Fact from the Cooperation Agreement with Cooperating Witness Medina*

First, Mr. Rodriguez asserts that the government
intentionally excluded from CW Medina's Cooperation Agreement
that "the material fact that as part of the Cooperation
Agreement . . . the Government will not seek the death penalty
against 'CW' Carlos Medina-Torres in relation to the charges
against him" and therefore Mr. Rodriguez was not able to cross-
examine Medina regarding this portion of the cooperation
agreement.  (Amend. Mot. at 2.)  The "mandate rule bars re-
litigation of issues already decided on direct appeal." *Yick Man
Mui*, 614 F.3d at 53.  "[W]hen the factual predicates of those
claims, while not explicitly raised on direct appeal, were
nonetheless impliedly rejected by the appellate court mandate,"
the district court must find the claim futile.  (*Id.* at 53
(citing *Pitcher*, 559 F.3d at 124).)  On direct appeal, Mr.
Rodriguez's appellate counsel argued the falsity of Mr. Medina's
testimony that he was facing a mandatory life sentence.  (Brief
and Appendix for Appellant Luis Rodriguez, at *61, 2012 WL
5903001, *Rodriguez*, 503 F. App'x 72 (Nov. 21, 2012).)  The
Second Circuit ruled that Mr. Rodriguez's perjury claim against
Mr. Medina "fails" because petitioner has "offered no evidence

that Medina did not believe his plea was valid or that he faced
a maximum sentence of life imprisonment – especially as Medina's
plea agreement states that his maximum possible sentence was
life imprisonment." *Rodriguez*, 503 F. App'x at *76 n.1.  Mr.
Rodriguez likely would have been aware at trial that Mr. Medina
pled guilty to a sentence of life imprisonment for a crime that
had the possibility of a death sentence, based on Mr. Medina's
testimony.  In addition, the Second Circuit dismissed Mr.
Rodriguez's challenges of perjury and credibility against Mr.
Medina.  As a result, the court finds that petitioner's claim at
minimum was impliedly raised on direct appeal.  Therefore,
petitioner's claim of exclusion of a material fact from CW
Medina's cooperation agreement is rendered futile by the mandate
rule.  Amendment of the petition to include this claim is
respectfully denied.

## 2. *Failure to Provide Documents Related to CW Medina's Testimony in Different State Trial*

Second, Mr. Rodriguez seeks to supplement his "pattern
of prosecutorial misconduct" claims with an allegation that
AUSAs Nyiendo and Capers "intentionally" failed to provide
testimony that CW Medina purportedly gave in an unrelated state
court trial, *People v. Aparicio*, 208 A.D. 2d 638, *aff'd,* 84 N.Y.
2d 1009 (N.Y. 1994), involving the shooting of a police officer
and the robbery of CW Medina. (Amend. Mot. at 2.)

The government asserts that Mr. Rodriguez's second claim in his motion to amend does not relate back because it involves whether Mr. Rodriguez "was entitled to a copy of Mr. Medina's purported testimony [in] a prior, unrelated state court trial" to use during cross-examination.  (Opp. at 35.)  Were the court to construe petitioner's claim as one for prosecutorial misconduct, rather than as a claim of ineffective assistance of counsel, there is no possibility that petitioner's amended claim could relate back to his original petition.  *Mayle*, 545 U.S. at 650.  Even as this court liberally construes petitioner's *pro se* motion to amend as a claim for ineffective assistance of counsel, the court cannot find that this claim arises out of the same core of operative facts.  *See Soler*, 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) ("[E]ven an ineffective assistance of counsel claim, when alleging a different ground for ineffective assistance, does not relate back to an earlier ineffective assistance claim.").

In any event, Mr. Rodriguez fails to demonstrate how testimony from an unrelated case would "establish 'a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different.'"  *United States v. Santos*, 486 F. App'x 133, 136 (2d Cir. 2012) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).  Mr. Rodriguez incorrectly states that the New York trial court ruled

in *Aparicio* that Mr. Medina's testimony was "incredible and/or just completely false," Amend. Mot. at 2, when in fact the jury was unable to reach a verdict on "the attempted robbery of Mr. Medina and the assault of the police officer," but convicted Mr. Aparicio on other counts. *See Aparicio v. Artuz*, 2000 WL 713744, at *1 (E.D.N.Y. May 25, 2000).[7]  Because Mr. Rodriguez's proposed amended claim is futile under any construction, it is respectfully denied.

### 3. *Ineffective Assistance of Counsel for Conflict of Interest*

Mr. Rodriguez's third claim is essentially the same as Ground Five of his petition discussed below.  (*See infra,* Ground Five.)  Mr. Rodriguez reiterates his claim that Ms. Murray prevented the first investigator, Mr. Dwyer, from working on Mr. Rodriguez's case and refusing to sign Mr. Dwyer's work vouchers. (Declaration in Support of Motion to Amend, at 2, ECF No. 9-1.) Further, in support of this claim, Petitioner summarily asserts that Ms. Murray had a "conflict of interest in relation to the preparation of the defense" because she "stated in open Court that she had an issue with the investigator Dwyer interviewing

---

[7]     The facts of *Aparicio v. Artuz* are recited in the district court ruling in Mr. Aparicio's habeas corpus petition in the Eastern District of New York. (*See Aparicio v. Artuz*, 2000 WL 713744, at *1 (E.D.N.Y. May 25, 2000).)  Mr. Aparicio's habeas petition was initially granted in part and denied in part, but this ruling was later overturned by the Second Circuit, denying Mr. Aparicio's petition entirely.  (*See Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001).)

Mr. Polanco and that she was afraid she was going to lose her license to practice law if investigator Dwyer contacted" Mr. Polanco.  (*Id.*)  The court addresses Mr. Rodriguez's claim for ineffective assistance with regard to Ms. Murray's alleged interference, including these assertions in petitioner's second motion to amend, in its discussion of Ground Five of his petition.  (*See infra,* Ground Five.)  For the reasons discussed below, Mr. Rodriguez's allegations do not show that Ms. Murray's intrusions were "substantial or frequent enough" to have seriously undermined Mr. Rodriguez's defense and, therefore, this proposed amended claim is denied.  *See McKaskle v. Wiggins*, 465 U.S. 168, 187 (1984).

Because none of the claims in his first motion to amend have merit for the reasons discussed in this section, *supra*, petitioner's first motion to amend is denied.

## C. Second Motion to Amend

Mr. Rodriguez asserts four claims in his second motion to amend, alleging that: (i) in a previous case, *United States v. Rodriguez*, 392 F.3d 539 (2004), AUSA Klugman asked the court to impose a more severe punishment against Mr. Rodriguez due to Mr. Rodriguez's purported civil claim against AUSA Klugman; (ii) in the present case, the arrest warrant affidavit contained false statements and petitioner allegedly was not brought before a judge in a timely manner;  (iii) the government violated the

mandate rule by using some of the underlying facts of the previous conviction overturned by the Second Circuit to obtain an indictment before the grand jury; and (iv) under the reasoning of *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), the grand jury indictment was improperly obtained because the government was not allowed to utilize any of the facts related to the previous acquitted conduct.[8]  (Second Amend. Mot. at 2-4.)

### 1.  *AUSA Request for More Severe Punishment*

Petitioner's claim that AUSA Klugman sought out a more severe sentence in his separate, overturned drug conviction is time-barred, as it does not relate back to any of the core operative facts underlying his ineffective assistance of counsel claims raised in this petition.  Petitioner's claim of prosecutorial misconduct regarding the previously overturned conviction arises from a different case, "separate in both time and type," from the ineffective assistance of counsel claims that are related to the present case.  Moreover, because the one-year statutory period has passed, *see* 28 U.S.C. § 2255(f)(1), this claim regarding the petitioner's previous,

---

[8]     Mr. Rodriguez does not construe these claims as ineffective assistance of counsel claims, but rather asserts them as additional claims which, so construed, would be procedurally barred.  (*See generally* Second Amend. Mot.) However, as Mr. Rodriguez proceeds *pro se*, this court construes these claims for the strongest arguments that they may raise and construes them as ineffective assistance claims.

overturned conviction is time-barred and denied. *Veal*, 2007 WL 3146925, at *5 (S.D.N.Y. Oct. 9, 2007) (collecting cases).

> ### 2. *False Statements in Arrest Warrant Affidavit and Failure to Appear Before a Judge in a Timely Manner*

First, Mr. Rodriguez provides no new facts to distinguish his claim, also raised in his original petition, alleging that Special Agent Iula submitted false statements in connection with petitioner's arrest warrant affidavit. (*See generally* Pet.)  The court finds that petitioner presents no new facts to support the merits of this claim and thus denies petitioner's motion to amend on this ground.

Second, as Mr. Rodriguez's assertion that he was not brought before a judge in a timely manner does allege new facts that may be the basis for a distinct claim, the court addresses this prong of petitioner's claim on its merits.  (Second Amend. Mot. at 2.)  Petitioner argues that he was not "taken before any judicial officer within the 48-hour rule, he was taken over eight days later [sic], after the Mandate [of the Second Circuit] was issued" and that the government had filed an Affidavit and Complaint in support an arrest warrant "[e]leven (11) days prior to the [Second Circuit's] Mandate."[9]  (Memorandum

---

[9]    Mr. Rodriguez's reply to the government's opposition to his second motion to amend provides no further clarity.  (*See generally* Second Reply.)  Mr. Rodriguez only repeats his conclusory arguments and refers to general discussions of prosecutorial misconduct.  (*Id.*)

in Support of Second Motion to Amend, at 2, ECF No. 64-1.)

However, petitioner appears to misunderstand the forty-eight-

hour rule for warrantless arrests as applying to the instant

case.  Petitioner appears to be referencing *County of Riverside*

*v. McLaughlin*, 500 U.S. 44 (1991).  In *McLaughlin*, the Supreme

Court found that the government has the burden to demonstrate

the existence of an extraordinary circumstance for a delay

beyond a forty-eight hour period for a probable cause

determination following a warrantless arrest.  500 U.S. at 57;

*see also Powell v. Nevada,* 511 U.S. 79, 83-84 (1994).  In the

instant case, a warrant was issued for petitioner's arrest.

(Arrest Warrant, Docket No. 05-cr-00153, ECF No. 2.)  Therefore,

petitioner's claim does not fall within the ambit of the forty-

eight-hour rule for warrantless arrests and this claim is futile

and is thus respectfully denied.

### 3.    *Violation of the Mandate Rule*

Mr. Rodriguez's third proposed claim in his motion to

amend asserts that the government "re-litigated the issue

resolved by the Court of Appeals for the Second Circuit in *U.S.*

*v. Rodriguez*, 392 F.3d 539 (2d Cir. 2004), with regards to a

heroin conspiracy that the Court overturn[ed] . . . and entered

a judgment of direct acquittal . . . ." in alleged violation of

the mandate rule.  (Second Amend. Mot. at 3.)  Mr. Rodriguez

misunderstands and misapplies the mandate rule.  The mandate

rule in the context of a Section 2255 proceeding bars a
petitioner, not the government, from "'relitigat[ing] questions
which were raised and considered on direct appeal,' including
questions as to the adequacy of counsel." (*Yick Man Mui*, 614
F.3d at 55 (quoting *United States v. Becker*, 502 F.3d 122, 127
(2d Cir. 2007)).)   "In the context of Section 2255 proceedings
involving claims of ineffective assistance of counsel [the
Second Circuit has] applied the mandate rule to bar claims
raised and resolved on direct appeal." (*Id.* at 53.)   The court
understands petitioner's conclusory argument here to be that the
government should have been barred from using overlapping facts
from petitioner's separate heroin case in the instant case.   The
mandate rule, however, restricts petitioner from bringing the
same or related claim decided on appeal from the instant action,
and has no bearing on petitioner's argument that the government
should be barred from relying upon facts previously considered
on direct appeal in a previous, separate conviction for heroin
conspiracy, that was overturned for insufficiency by the Second
Circuit.   (*See Rodriguez*, 392 F.3d at 545-49 (finding that there
was not sufficient evidence under an "aiding and abetting
theory" or a "constructive possession theory" to support Mr.
Rodriguez's conviction for conspiracy with intent to distribute
heroin).)   As Mr. Rodriguez's claim misapplies the mandate rule
and has no merit, no prejudice could arise from counsel's

33

failure to raise it and thus the claim is futile, and amendment on this ground is respectfully denied.

### 4. *Nelson v. Colorado Requires Overturning the Indictment*

Finally, petitioner asserts that the Supreme Court's decision in *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), "compels the conclusion that [*United States v. Watts*, 519 U.S. 148 (1997)] has been effectively overruled" and "[ac]quitted conduct cannot be used to penalize (or increase a penalty) because an acquittal, by any means, restores the 'presumption of innocence.'" (Second Amend. Mot. at 4.)  In *Nelson*, the Supreme Court held that Colorado statutes requiring defendants whose convictions had been reversed or vacated to prove their innocence by clear and convincing evidence to obtain the refund of costs, fees, and restitution paid pursuant to the invalid conviction violated due process. (137 S. Ct. at 1255-58.)

*Nelson* reaffirmed a long-standing rule that the defendants' "presumption of [] innocence was restored" in relation to the crimes they were previously convicted of, and subsequently acquitted of.  (*Id.* at 1255.)  Mr. Rodriguez's presumption of innocence was restored with regard to the heroin conspiracy, but this presumption does not preclude his prosecution and conviction for cocaine conspiracy and conspiracy to murder "Ronnie" and "El Renco," who were mistakenly believed

to be the actual murder victims, Mr. Garces and his fourteen-year-old stepson Edgardo Bryan.  Mr. Rodriguez seeks to significantly expand *Nelson*'s restoration of the presumption of innocence, and would preclude the government from mentioning any underlying facts relevant to the prosecution of a different offense, that may also have been relevant in the acquitted case.[10]  There is no legal basis supporting Mr. Rodriguez's claim.  (Second Opp. at 3.)  Therefore, Mr. Rodriguez's fourth claim is futile and is respectfully denied.

Because none of the claims in his second motion to amend have merit for the reasons discussed in this section *supra*, petitioner's second motion to amend is also denied.

## II. Preliminary Considerations for Section 2255 Habeas Petition

The court next considers the merits of Mr. Rodriguez's *habeas* petition by first addressing two threshold issues: (1) whether Mr. Rodriguez's petition was timely filed; and (2) whether the court may decide the petition on the submitted

---

[10]   Mr. Rodriguez is also incorrect in his contention that *Nelson v. Colorado* overturned *United States v. Watts,* 519 U.S. 148 (1997).  The Supreme Court in *Watts* held that sentencing courts may consider a defendants' acquitted conduct, so long as this conduct was proven by preponderance of the evidence.  519 U.S. at 157.  *Watts* is not relevant to petitioner's claim as his acquitted conduct is not at issue here.  Rather, Mr. Rodriguez seeks to argue that his indictment giving rise to the instant petition was improper, despite being convicted of offenses wholly different from his acquitted conduct.  For the reasons discussed above, this claim is meritless.

records before the court, or whether an evidentiary hearing is
necessary.

A. **Timeliness of Section 2255 Motion**

A motion pursuant to 28 U.S.C. § 2255 must be filed
within one year from the date on which the judgment of
conviction becomes final.  28 U.S.C. § 2255(f)(1).  The Second
Circuit has ruled that the one-year statute of limitations for a
*habeas* petition runs from the Supreme Court's denial of a writ
of certiorari under the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA").  *See Rosa v. United States*, 785
F.3d 856, 857 (2d Cir. 2015).  "Where a prisoner proceeds *pro
se*, the filing date is governed by the 'prisoner mailbox rule,'
which provides that the effective filing date is the day upon
which the prisoner delivers the petition to prison officials for
mailing."  *Mingo v. United States*, 360 F. Supp. 2d 591, 593
(S.D.N.Y. 2005) (citing *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir.
2007)); *see also Houston v. Lack*, 487 U.S. 266, 276 (1988)
(defining the prisoner mailbox rule).

In the present case, Mr. Rodriguez's judgment of
conviction became final on October 7, 2013, when the Supreme
Court denied his writ of certiorari.  *Rodriguez v. United
States*, 571 U.S. 942 (2013).  Though his petition was filed with
the court on October 20, 2014, Mr. Rodriguez signed his petition
on October 1, 2014, *see* Pet. at 12, within the one-year statute

of limitations.  "[I]n the absence of contrary evidence, district courts in [the Second] circuit have tended to assume that prisoners' papers were given to prison officials on the date of their signing."  *Hardy v. Conway*, 162 F. App'x. 61, 62 (2d Cir. 2006) (collecting cases).  Therefore, in line with the "prisoner mailbox rule," the court deems Mr. Rodriguez's petition timely.

### B. <u>Evidentiary Hearing</u>

The court must also decide whether the claims in Mr. Rodriguez's petition can be addressed on the record before the court, or whether Mr. Rodriguez's request for an evidentiary hearing should be granted.  "In ruling on a motion under Section 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'"  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255).  "[T]he filing of a motion pursuant to Section 2255 does not automatically entitle the movant to a hearing." (*Id.*)  No hearing is necessary "where the allegations are 'vague, conclusory, or palpably incredible.'" (*Id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).)  A hearing is necessary only where the petition "set[s] forth specific facts supported by competent evidence, raising detailed

and controverted issues of fact that, if proved at a hearing,
would entitle [the petitioner] to relief." (*Id.*)

Even if a hearing is warranted, it is "within the
district court's discretion to determine the scope and nature of
a hearing." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir.
2011) (citing *Chang v. United States*, 250 F.3d 79, 85-86 (2d
Cir. 2001)). A court need not hold a full testimonial hearing
where "the testimony of [the petitioner] and his trial counsel
would add little or nothing to the written submissions." *Chang*,
250 F.3d at 86; *see also Florez v. United States*, 2007 WL
162764, at *4 (E.D.N.Y. Jan. 18, 2007) ("A review of the papers
submitted by the parties, including a detailed affidavit from
[petitioner's counsel], are sufficient to decide this issue; a
full testimonial hearing is unnecessary"). In the Second
Circuit, courts frequently "consider the 'trial record, letters,
documents, exhibits, affidavits and written interrogatories' and
may adopt a 'middle road' approach, declining to hold a hearing
and 'deciding disputed facts on the basis of written
submissions.'" *Rosario v. United States*, 2019 WL 5260784, at *3
(S.D.N.Y. Oct. 17, 2019) (quoting *Pham v. United States*, 317
F.3d 178, 184 (2d Cir. 2003)); *see also Wang v. United States*,
458 F. App'x. 44, 45 (2d Cir. 2012) (summary order) ("[T]he
District Court did conduct an evidentiary hearing, albeit one

limited to the sworn, written submissions of [petitioner], his former counsel, and the interpreters.").

In the present case, the court directed Mr. Gordon and Ms. Murray to respond to Mr. Rodriguez's allegations of ineffective assistance of counsel. (Order to Show Cause, ¶ 1, ECF No. 2.) Mr. Gordon filed a detailed eight-page affidavit contradicting Mr. Rodriguez's claims that Mr. Gordon failed to: object to Magistrate Judge Pollak's rejection of petitioner's jurisdictional argument; make a jurisdictional argument as a defense after the filing of the indictment; and investigate prosecutorial misconduct. (*See generally* Gordon Aff.) Ms. Murray filed a detailed five-page declaration contradicting Mr. Rodriguez's claim of interference with his right to self-representation, the alleged failure to call German Polanco at Trial, and the alleged failure to investigate prosecutorial misconduct. (*See generally* Murray Decl.)

Based on the extensive record before it, including the affidavits of petitioner's counsel, the court finds the "middle road" approach is sufficient to decide the petition, and that an evidentiary hearing would add "little to nothing" to the court's adjudication of Mr. Rodriguez's petition. Accordingly, the court will decide Mr. Rodriguez's petition on the record before it and declines to order an evidentiary hearing.

**III. Petitioner's Grounds for Section 2255 Habeas Relief**

   Mr. Rodriguez moves for habeas relief pursuant to Section 2255 on the grounds that ineffective assistance of counsel was rendered to him for: (1) counsel's alleged failure to object to the court's determination of jurisdiction during the pre-indictment process; (2) counsel's alleged failure to raise prosecutorial misconduct impaired the independence of the grand jury requiring dismissal of the indictment; (3) counsel's alleged failure to raise the issue of erroneous grand jury instructions, which would require dismissal of the indictment; (4) counsel's alleged failure to raise due process considerations prohibiting the government from obtaining an indictment based on known perjured testimony and failure to assert that the Government improperly "inflamed" the Grand Jury in violation of the Sixth Amendment; (5) the alleged violation of Mr. Rodriguez's Sixth Amendment right to self-representation; (6) counsel's alleged failure to raise that the third prong of 21 U.S.C. § 848(e)(1)(A) unduly infringes on the police power reserved to the State of New York as applied to Mr. Rodriguez's case; and (7) counsel's failure to raise the alleged pattern of prosecutorial misconduct within the Eastern District of New York

and failure to investigate for the defense in preparation for trial or dismissal of indictment.[11]  (Pet. at 4-18.)

For the reasons described below, the court finds that petitioner's claims are without merit.

A.  **Legal Standard**

In reviewing an ineffective assistance of counsel claim, the court must apply the "highly demanding" standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  Under *Strickland*, a petitioner must show (1) that defense counsel's representation fell below an objective standard of reasonableness (the "performance prong"); and (2) "that there is

---

[11]    In a letter filed February 2, 2016, Mr. Rodriguez wrote to the court requesting that the court "view these claims [in his *habeas* petition] as an 'actual innocen[ce]' claim, because the Government attorneys violated the Indictment clause, which requires that an Indictment contain some factual particularity to ensure that the prosecution will not 'fill in' elements of its case with 'facts other' than those considered by the Grand Jury." (Rodriguez Letter Filed February 2, 2016, at 1, ECF No. 48.)  Mr. Rodriguez noted on his original petition forms that he wished that his claims be considered as claims for ineffective assistance of counsel.  (Pet. at 4-18.)
    Interpreting petitioner's claims as "actual innocence" claims would not benefit petitioner.  "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 615.  "To establish actual innocence, petitioner must demonstrate that, 'in  light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" (*Id.* at 623 (quoting *Schlup*, 513 U.S. at 327-28).)  Mr. Rodriguez appealed his conviction on the grounds that the government failed to disclose informants' statements leading to a purported *Brady* violation with respect to his conviction for murder conspiracy, and that the evidence was insufficient to support his conviction as part of a cocaine conspiracy. *Rodriguez*, 503 F. App'x at 74-76.  On direct appeal, however, the Second Circuit found no *Brady* violation, affirmed that there was sufficient evidence to find Mr. Rodriguez guilty of the cocaine conspiracy, and rejected Mr. Rodriguez's perjury claims against Mr. Medina.  (*Id.* at 74-76, n.1.)  Were the court to interpret Mr. Rodriguez's claims as actual innocence claims, they would fail, as petitioner is unable to meet the standard, *Bousley*, 523 U.S. at 615,  and the actual innocence claim is based on a legal misunderstanding.  Instead, the court construes petitioner's claims as ineffective assistance of counsel claims.

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (the "prejudice prong"). *Pham*, 317 F.3d at 182 (citing *Strickland*, 466 U.S. at 688, 694). The district court need only consider the second prong "for where 'it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [than on the ground of objectively unreasonable performance] . . . that course should be followed." *Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012) (quoting *Strickland*, 466 U.S. at 697).

"The performance component of the *Strickland* test asks whether a 'counsel's representation fell below an objective standard of reasonableness.'" *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). A court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The court reviews counsel's actions, keeping in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

The prejudice component of *Strickland* asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gueits v. Kitzpatrick*, 612 F.3d 118, 122 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Merely showing that counsel's errors had "some conceivable effect" on the outcome is not enough to satisfy the prejudice prong, but "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693. Further, a finding of prejudice requires some objective evidence other than the petitioner's assertions. *Pham*, 317 F.3d at 182 (citing *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998).

**B.** <u>**Ground One: Failure to Object to Court's Determination of Jurisdiction**</u>

Mr. Rodriguez asserts an ineffective assistance of counsel claim on the basis that his attorney, Mr. Gordon, did not object to the court's determination of standing even though "[Special Agent] Bryan Iula failed to demonstrate or prove Standing (Injury in Fact, Causation and Redressability; Personal and Particular to Himself) in the initial filing of the Complaint, Complaint in support of an Arrest Warrant and the

Indictment." (Memorandum in Support of Section 2255 Petition ("Pet. Mem."), at 11-12, ECF No. 1-3.) For the following reasons, petitioner's claim is without merit.

Mr. Rodriguez challenged *pro se* the government's standing on at least five occasions and on all occasions his challenge was denied. "It is well accepted that a defendant who exercises his right to appear *pro se* is not permitted to complain later about the quality of his own defense or raise an ineffective assistance of counsel claim." *United States v. Abdur-Rahman*, 512 F. App'x 1, 4 (2d Cir. 2013)(citing *McKaskle*, 465 U.S. at 177 n.8). First, during his February 15, 2005 detention hearing, Mr. Rodriguez objected to the court's jurisdiction with Mr. Gordon present and stated "I just met Mr. Gordon. I could speak for myself . . . Secondly, okay, there's no jurisdiction . . . ." (Detention Hearing at 3-4.) It appears from this court's review of the May 18, 2005 status conference that Mr. Rodriguez had filed a motion dated March 17, 2005 to represent himself, asserting that the court lacked jurisdiction, which he reiterated during the status conference. (May 18, 2005 Status Conference, at 4-11, 05-cr-00153, ECF No. 9.) Next, this same jurisdictional challenge was again asserted by Mr. Rodriguez in a motion in June 2005, a Rule 33 motion in July 2010, and a sentencing motion in July 2010. Finally, according to Mr. Gordon, when counsel went to speak with Mr.

44

Rodriguez immediately prior to the June 20, 2005 conference,
petitioner refused to speak to counsel and indicated that
petitioner sought to represent himself, and Mr. Gordon was
subsequently relieved as counsel on June 20, 2005.  (Gordon Aff.
at 5.)  As Mr. Rodriguez repeatedly sought to make this
jurisdictional challenge *pro se*, he fails to meet his burden
under the performance prong of the *Strickland* test.

Further, Mr. Rodriguez's objection to the court's
jurisdiction is meritless, as found by Judges Pollak and Trager,
and thus no prejudice results from counsel's alleged failure to
raise this claim.  Mr. Rodriguez appears to assert two
challenges to the court's jurisdiction: (1) that Special Agent
Iula did not suffer a personal injury and therefore lacked
"standing" to bring the criminal complaint; and (2) that it is
not clear that the cocaine at issue was involved in interstate
commerce.  Petitioner's argument fails on both prongs.  First,
Mr. Rodriguez was convicted of violating 21 U.S.C. §
848(e)(1)(A), a federal statute.  This court has original
jurisdiction for all offenses against the laws of the United
States that occur in the Eastern District of New York.  *See* U.S.
Const. art. III, § 2; 18 U.S.C. § 3231.  Next, the Second
Circuit "has repeatedly held that Congress reasonably concluded
that narcotics trafficking has a substantial effect on
interstate or foreign commerce."  *United States v. Feliciano*,

45

223 F.3d 102, 118 (2d Cir. 2000); *see also Gonzales v. Raich*,
545 U.S. 1, 17-18 (2005)).  As no prejudice could have resulted
from Mr. Gordon's alleged failure to raise a standing or
jurisdictional claim, it is denied.

C. **Ground Two: Failure to Raise Prosecutorial Misconduct
that Impaired the Independence of the Grand Jury**

Mr. Rodriguez next asserts an ineffective assistance
of counsel claim on the basis of his counsel's purported failure
to raise the government's "war on drugs policy," the grand
jury's alleged reliance on "double and triple hearsay," and the
allegedly shortened length of grand jury deliberations.  (Pet.
Mem. at 17, 22, 23.)  For the following reasons, petitioner's
second claim is without merit.

Mr. Rodriguez's assertions are speculative and
conclusory, offered without specific allegations or citations to
the record, and broadly cite to Special Agent Iula's grand jury
testimony. (*See generally* Grand Jury. Tr.)  "'[S]peculation and
surmise' as to what occurred before the grand jury is not
sufficient to overcome the presumption of regularity accorded to
grand jury proceedings." *United States v. Sullivan*, 2004 WL
253316, at *6 (S.D.N.Y. Feb. 10, 2004) (quoting *United States v.
Gibson*, 175 F. Supp. 2d 532, 534 (S.D.N.Y. 2001).  In addition,
a finding of prejudice under *Strickland* requires some objective
evidence other than petitioner's assertions.  *Pham*, 317 F.3d at

182 (citing *Gordon*, 156 F.3d at 380).  Conclusory citations to a broad record are insufficient.  However, had petitioner provided support for his claims, they would still fail for the following reasons.

First, Mr. Rodriguez's claim alleging prosecutorial reliance on "double and triple hearsay material testimony," Pet. Mem. at 17, fails because an "indictment valid on its face cannot be challenged on the ground that the grand jury acted on the basis of inadequate evidence."  *Martinez v. United States*, 2012 WL 1071239, at *9 (S.D.N.Y. Mar. 30, 2012) (collecting cases).  "Even where all the evidence before the grand jury is 'in the nature of hearsay, the Fifth Amendment requires nothing more than an indictment, valid on its face, returned by a legally constituted and unbiased grand jury."  (*Id.* (quoting *Costello v. United States*, 350 U.S. 359, 363 (1956)); *United States v. Perez*, 575 F.3d 164, 166 (2d Cir. 2009) ("The Defendants, however, had no basis to challenge the sufficiency of the indictment before trial because it met the basic pleading requirements and was valid on its face.").)  An indictment is valid on its face when it meets the pleading requirements of Federal Rule of Criminal Procedure 7 that requires only "a plain, concise, and definite written statement of the essential

facts constituting the offense charged."  Fed. R. Crim. P.
7(c)(1).

Second, Mr. Rodriguez asserts that the government's
conduct at trial deprived him of "Jencks material he would
otherwise be entitled to, more in capital offenses eligible
actions like the one against Movant-Mr. Rodriguez."  (Pet. Mem.
at 22.)  While unclear, the court reads "Jencks material" to
refer to Jencks Act material, requiring the government to
produce statements by government witnesses. 18 U.S.C. § 3500(b).
The Jencks Act requires the government to "produce statements by
government witnesses only after the witness has testified at
trial." *United States v. Zuckerman*, 88 F. Supp.2d 9, 16
(E.D.N.Y. 2000) (citing *United States v. McKay*, 70 F. Supp. 2d
208, 213 (E.D.N.Y. 1999); *see also* 18 U.S.C. § 3500(a) ("In any
criminal prosecution brought by the United States, no statement
or report in the possession of the United States which was made
by a Government witness or prospective Government witness . . .
shall be subject of subpoena, discovery, or inspection until
said witness has testified on direct examination in the trial of
the case.") Here, petitioner does not specify what testimony
should have been provided to him and, despite having some
portion of Special Agent Iula's grand jury transcript, *see* Grand
Jury Tr., nevertheless speculates as to what may have been
provided to the grand jury and may have been kept from him.

Therefore, petitioner could not have been prejudiced by his attorney's alleged failure to raise this issue.

Petitioner's claim regarding time allotted for grand jury deliberations is based only on his conclusory assertions that "common sense" and the "experience of [Special Agents] Brian Fleming and Bryan Iula in investigating what transpired demonstrate that this takes a considerable amount of time in a complex case of this magnitude," and that there "is no possibility that the Government was able to marshal this evidence, present it to the grand jury for its independent evaluation, and obtain a carefully considered indictment in the time allotted."[12]   (*Id.* at 23.)   Mr. Rodriguez's allegations fail, as they are either too vague or unsupported by the record, as required to show either prosecutorial misconduct or either prong of the *Strickland* test.   *See Hicks v. Ercole*, 2015 WL

---

[12]     In support of this argument, Mr. Rodriguez cites to several cases, *United States v. Jacobson*, 691 F.2d 110, 115 (2d Cir. 1982), *United States v. Samango*, 607 F.2d 877, 882-83 (9th Cir. 1979), *United States v. Breslin*, 619 F. Supp. 438, 443, 445 (E.D. Pa. 1996), and *United States v. Carcaise*, 442 F. Supp. 1209, 1213 (M.D. Fla. 1978), for the proposition that two months was insufficient investigatory time. (Pet. Mem. at 17.)

However, as Mr. Rodriguez appears to admit, these cases are distinguishable: in the first case, the government informed the grand jury that "the statute of limitations would run in three days," *Jacobson*, 691 F.2d at 115; the record in the second case showed that "several jurors were not familiar with the contents of those [grand jury] transcripts," *Samango*, 607 F.2d at 881; in the third case, among other things, there was a reference to a television documentary that was highly prejudicial, improper characterization of evidence, and constant reference to the statute of limitations, *Breslin*, 619 F. Supp. at 443-46; in the fourth, there was a failure to read the deposition testimony of a witness in its entirety to the grand jury or to provide the grand jury with a thorough summary by a sworn competent witness, *Carcaise*, 442 F. Supp. at 412.

1266800, at *23 (S.D.N.Y. Mar. 18, 2015) ("The failure of a
lawyer to invoke meritless objections cannot constitute
constitutionally deficient performance.")  As no prejudice can
arise from counsel failing to raise a meritless claim, Mr.
Rodriguez's claim is denied.

D. **Ground Three: Failure to Raise the Erroneous Jury
Instructions**

Mr. Rodriguez next claims counsel was ineffective in
failing to challenge the grand jury instructions.  (Pet. Mem. at
29, 35.)  Petitioner's claims rest on speculation and surmise as
to the actual grand jury instruction, as he admitted that his
"memorandum of law assumes that the model grand jury
instructions recommended by the administrative office of the
United States Court were used."  (Pet. Mot. at 29.)  His claims
are therefore unavailing to overcome the "presumption of
regularity" accorded to grand jury proceedings.  *Martinez*, 2012
WL 1071239, at *9.  "Courts have consistently upheld as
constitutional the Model [Federal Grand Jury] Charge,
instructions to indict if probable cause is found, and
instructions to not consider the wisdom of criminal laws enacted
by Congress."  *United States v. Faltine*, 2014 WL 4370811, at* 7
(E.D.N.Y. Sept. 2, 2014) (collecting cases).  As no prejudice

can arise from failing to raise a meritless claim, Mr. Rodriguez's claim is denied.

**E. <u>Ground Four: Failure to Raise Due Process Considerations</u>**

Next, Mr. Rodriguez asserts that Mr. Gordon rendered ineffective assistance of counsel because he failed to "take any action or confirm any of the facts claimed by Movant/Defendant Mr. Rodriguez" alleging due process violations rendered by the prosecution's intentional provision of "false and misleading" statements in the complaint and affidavit of Special Agent Iula, and material testimony the prosecution knew to be "false," "misleading," and "in part fabricated." (Pet. Mot. at 38-42, 49.) For the following reasons, this claim fails.

A *habeas* petitioner seeking to raise a claim that a government witness committed perjury before a grand jury must show that "an individual under oath made a false statement, 'as to a material fact . . . which the individual did not believe to be true.'" *Stinson v. United* States, 2015 WL 539457, at *3 (D. Conn. Feb. 6, 2015) (quoting *United States v. Stone*, 429 F. 2d 138, 140 (2d Cir. 1970)) (brackets omitted). A "jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *United States v. Mechanik,* 475 U.S. 66, 106 (1986). Thus, "any error in the grand jury proceeding connected with the

charging decision [is] harmless beyond a reasonable doubt," and appellate counsel's alleged failure to raise this claim cannot be said to have prejudiced the petitioner.  (*Id.* at 70.)

Further, "the clearly established Supreme Court precedent relevant to [a] habeas petition [alleging the use of perjured testimony] is that the conviction must be set aside if (1) the prosecution actually knew of...false testimony, and (2) there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Drake v. Portuondo*, 553 F.3d 230, 241 (2d Cir. 2009) (discussing *United States v. Agurs,* 427 U.S. 97, 96 S. Ct. 2392 (1976), *holding modified by United States v. Bagley,* 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985).  As the court has already found that Mr. Rodriguez's has presented no new facts supporting his argument that Special Agent Iula's testimony was false and the government knew it to be so, *see supra* Second Motion to Amend, petitioner's argument fails the first prong and is without merit.

Further, Mr. Rodriguez's assertions are conclusory and do not present facts demonstrating that the government elicited false testimony before the grand jury in his case.  Petitioner repeatedly asserts that the prosecution intentionally elicited testimony they knew to be false and misleading hearsay from the witness.  (Pet. Mot. at 38-49.)  Petitioner's assertions that,

52

"this testimony is totally false and AUSA Max Minzner (AUSA-EDNY) and Complainant Bryan Iula knew that the telephone calls were not made to the phone of Movant/Defendant Mr. Rodriguez," and, "Complainant Bryan Iula fabricated in part the testimony and was aware that the testimony was double and triple hearsay that would coerce and mislead the Grand Jury," fail to demonstrate that the testimony was false or that the prosecutor knowingly introduced perjured testimony. (*Id.* at 48-49.)

The only factual predicate petitioner points to is a fact outside of his case. Petitioner appends a letter drafted by AUSA Carrie Capwell, on behalf of the United States Attorney's Office for the Eastern District of New York, to a Mr. Schatz, regarding an unrelated case, *United States v. Santos*, Criminal Docket No. 01-537 (DGT). AUSA Capwell's letter relays that witness Mark Fritsche, "a video editor from N-Vision who testified at the *Santos* trial," stated that his testimony at the *Santos* trial had not been truthful and "that his testimony was given to him by former AUSA Max Minzner in preparation for his testimony" in the *Santos* trial. (United States Attorney Office of the Eastern District of New York Letter Regarding *United States v. Manuel Santos* dated May 8, 2007 ("USAO Letter"), at 52, Exhibit 3-A, ECF No. 1-4.) AUSA Minzner's conduct in *Santos* is not before this court and, without more, the USAO Letter alone cannot support an inference that AUSA Minzner repeated his

alleged conduct in *Santos* in petitioner's case.  The court
therefore finds that Mr. Rodriguez has failed to demonstrate how
the USAO Letter in *Santos* establishes prosecutorial misconduct
in petitioner's case, and has proffered no evidence that Special
Agent Iula committed perjury before the grand jury.[13,14]

Further, Mr. Gordon states in his affidavit that
"[d]uring this brief period [that Mr. Gordon represented Mr.

---

[13]     In *United States v. Santos*, the Second Circuit affirmed the district
court's finding that Mark Fritsche testified credibly at the Rule 33 motion
hearing and "offered an 'appropriate' explanation for his testimony at
trial," because "[g]iven [Fritsche's] testimony concerning his company's
creation of the videos and the fact that the expert never testified that he
personally created the videos . . . there is no basis to question the
district court's finding." 486 F. App'x 133, 134 (2d Cir. 2012) (summary
order).

[14]     Mr. Rodriguez adds that Special Agent Iula incorrectly stated that
petitioner "had been arrested for the charge[] of attempt[ing] to
distribute...cocaine, then [Iula] corrects [himself] and states that [Mr.
Rodriguez was arrested on a charge of]...conspiracy to distribute two
kilograms [of] heroin." (Pet. Mem. at 42.)  Mr. Rodriguez asserts that this
testimony "elicit[ed] by prosecutor Max Minzner is an intentional attempt to
depict Movant-Rodriguez as a bad person rather than to support additional
charges."  (*Id.*)  In reviewing the appended selection of Special Agent Iula's
grand jury testimony it is clear that Mr. Rodriguez has misread the
transcript, as Special Agent Iula is referring to cooperating witness Carlos
Medina:

> Q. Did you participate in the arrest of Carlos Medina in December of
> 2000?
> A. Yes, I did.
> Q. What was Carlos Medina arrested for?
> A. Possession of two kilograms of cocaine - - conspiracy to distribute
> two kilograms of heroin, I'm sorry.

(Grand Jury Tr. at 30-31.)  Mr. Rodriguez also points the court to Special
Agent Iula's complaint and affidavit in support of his arrest warrant and
states that the court should review "paragraphs 6 and 7 regarding phone
records 'not' belonging to Movant-Mr. Rodriguez." (Pet. Mem. at 42.)  In
reviewing these paragraphs, it is not clear what Mr. Rodriguez relies on to
support his arguments.  The affidavit is highly specific and provides that
"[r]ecords for that pay telephone [a few blocks away from the murder that was
used by the Cooperating Witness] show two calls to the number for 'El Negro'
at 8:36 p.m. and a call to RODRIGUEZ's cellular telephone at 8:37 p.m. that
night."  (Complaint and Affidavit in Support of Arrest Warrant dated January
26, 2005, at 23, ECF No. 1-4.)

Rodriguez] I had not seen the grand jury testimony and therefore had no knowledge of any purported pattern of prosecutorial misconduct," and, "I have no recollection of [petitioner's] asking me to obtain an investigator to investigate any claim of prosecutorial misconduct in the grand jury."  (Gordon Aff. at 7.)  Mr. Gordon's affidavit refutes petitioner's assertions.  In any event, standing on their own, petitioner's conclusory assertions cannot support a finding of deficient performance, and most importantly, cannot support a finding that prejudice could arise.  As a result, petitioner's argument is meritless.  *See United States v. Noble*, 363 F. App'x 771, 773 (2d Cir. 2010) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("An attorney's '[f]ailure to make a meritless argument does not amount to ineffective assistance.'") For the reasons stated above, the court denies the claim that counsel was ineffective for failing to raise a due process violation.

   F. **Ground Five: Violation of Sixth Amendment Right to Self-Representation**

        Mr. Rodriguez's fifth claim asserts that his standby counsel and eventual principal counsel, Ms. Murray, violated his right to self-representation as she "proceeded to interfere with the communications between [the] investigator [Mr. Dwyer] assigned by the Court," stopped Mr. Dwyer "from interviewing other potential witness[es] including German Polanco" and

"Carlos Medina's room-mate" Mr. Aguilar, requested approval for additional funds to hire another investigator without Mr. Rodriguez's approval, and did not provide Mr. Rodriguez the USAO Letter related to the *Santos* trial.  (Pet. Mem. at 50-53.)   Mr. Rodriguez asserts that Ms. Murray put "her personal interest and finances before that of her client's," which was an "intentional act of sabotage" to his defense.  (*Id.* at 54.)   For the following reasons, petitioner's claim is denied because it is without merit.

"Although not expressly stated in the Sixth Amendment, a clearly established corollary to the right to counsel is the right to dispense with [a] lawyer's help, and to represent oneself."  *Dallio v. Spitzer*, 343 F.3d 553, 560 (2d Cir. 2003) (internal citations and quotations omitted); *see also Faretta v. California*, 422 U.S. 806, 819 (1975) ("Although not stated in the amendment in so many words, the right to self-representation -to make one's own defense personally-is thus necessarily implied by the structure of the Amendment.").  The core of this *Faretta* right is that "the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury."  *McKaskle*, 465 U.S. at 178.  The *Faretta* right is eroded "[i]f standby counsel's participation over defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control

questioning of witnesses, or to speak instead of defendant on
any matter of importance." (*Id.*)  "Stand-by counsel's
participation is limited in two ways: (1) the defendant has the
right to preserve actual control over the content of the case
presented to the jury, and so standby counsel is not allowed to
'make or substantially interfere with any significant tactical
decisions, or to control the questioning of witnesses, or to
speak *instead* of defendant on any matter of importance'; and (2)
standby counsel's participation must not be allowed to destroy
the jury's perception that the *pro se* defendant is representing
herself." *Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008)
(quoting *McKaskle*, 465 U.S. at 178-79) (emphasis in original).

However, the *pro se* defendant's control over his
defense is not without limit.  In *McKaskle*, the Supreme Court
decided that intrusions of standby counsel, where counsel "made
motions, dictated proposed strategies into the record,
registered objections to the prosecution's testimony, urged the
summoning of additional witnesses, and suggested questions that
the defendant should have asked of witnesses," were "simply not
substantial or frequent enough to have seriously undermined [the
defendant's] appearance before the jury in the status of one
representing himself." *McKaskle*, 465 U.S. at 180, 187.   Mr.
Rodriguez's claims speak to the first set of limitations
identified by the Second Circuit that the "defendant has the

right to preserve actual control over the content of the case."
*Clark*, 510 F.3d at 395.  However, Mr. Rodriguez fails to
demonstrate how Ms. Murray's decisions were "substantial or
frequent enough" to have seriously undermined his appearance of
self-representation before the jury.

Further, Ms. Murray did not improperly interfere with
Mr. Dwyer's investigation.  Judge Trager appointed Mr. Dwyer as
a defense investigator under the sole direction and supervision
of Ms. Murray.  (Appointment of Defense Investigator Dwyer dated
November 16, 2005, at 1, 05-cr-00153, ECF No. 33.)  In her
declaration, Ms. Murray states:

> Some months after his appointment, Mr. Dwyer sent me a
> voucher for my signature.  I refused to sign it. My
> recollection is that the voucher represented the
> entirety of investigative hours assigned to the case,
> and of the 100 hours, most had been spent on travel
> time to and from the MDC, travel time to and from
> witness interviews (several of which were
> unsuccessful), study of case documents, briefing of
> other investigators employed by Mr. Dwyer, and
> meetings with the client.  I recall that less than a
> third of hours had been spent actually investigating
> the case.  I was not comfortable signing this voucher
> given the ratio of investigative time to
> travel/preparation time.  Accordingly, I directed Mr.
> Dwyer to submit this voucher directly to Judge Trager.
> I believe that Mr. Dwyer did so, and Judge Trager
> signed the voucher and Mr. Dwyer was paid in full.

(Murray Decl. ¶ 6.)  Ms. Murray states that Mr. Rodriguez was
fully aware of her concerns regarding the investigative hours
and Judge Trager granted Mr. Rodriguez's subsequent request,

Order Dated May 3, 2006, 05-cr-00153, ECF No. 62, to allot "an additional 50 hours of investigation time to Mr. Dwyer's firm" under the supervision of Ms. Murray.  (*Id.* ¶ 7.)  Mr. Dwyer refused this offer and submitted a letter, appended to Mr. Rodriguez's petition, which explains that he would not be able to continue working on petitioner's case because "Miss Murray has made it abundantly clear she does not want to work with us." (Dwyer Letter dated June 5, 2006, at 76-77, ECF No. 1-4.)  Ms. Murray also states that after she was appointed trial counsel mid-trial, "Mr. Dwyer agreed to work again on the defense case . . . [and that] Mr. Dwyer did additional investigation relating to Mr. Rodriguez's employment at the time of the murders, and this investigation produced a witness I called on the defense case."  (Murray Decl. ¶ 8.)

Judge Trager granted Ms. Murray supervisory authority over Mr. Dwyer's investigation, and after the dispute with Mr. Dwyer, Ms. Murray offered to enlist a new investigator for Mr. Rodriguez, Murray Decl. ¶ 7, and retained an additional investigator to ensure any further relevant investigation was completed.  (Appointment of Defense Investigator Scully dated November 14, 2006, at 1, 05-cr-00153 ECF No. 92.)  Ms. Murray also rehired Mr. Dwyer and called a witness found in his investigation at trial.  Mr. Rodriguez's self-serving assertions simply do not account for why he allowed Ms. Murray to represent

him at trial when he was aware of the letter by Mr. Dwyer and of
the multiple orders appointing defense investigators by Judge
Trager.

Mr. Rodriguez's insistence that German Polanco be
called at trial, and that calling Mr. Aguilar would have been
beneficial to Mr. Medina's cross-examination, are similarly
unsupported.  First, Mr. Rodriguez requested that Mr. Polanco be
produced at trial, but Judge Trager refused and "pronounced this
strategy 'suicidal.'"  (Murray Decl. ¶ 11.)  Mr. Rodriguez does
not explain how Mr. Polanco's testimony, who was found guilty of
engaging in the murder conspiracy, would have exonerated Mr.
Rodriguez, particularly when the phone record evidence tied Mr.
Polanco to the murders and to Mr. Rodriguez.[15]

Second, Mr. Rodriguez contends that Carlos Medina
"enlisted ... (Mr. [A]guillar)" who was Mr. Medina's "room-mate
at the Metropolitan Detention Center in Brooklyn . . . to commit
another murder and a drug robbery, ... after 'CW' Medina made
[an] agreement with the government to stop committing crimes,"
and that Mr. Aguillar's testimony at this point would have been
useful in cross-examining Carlos Medina.  (Pet. Mem. at 51.)
While unclear, it appears that petitioner asserts that Ms.
Murray did not permit Mr. Dwyer to investigate and did not

---

[15]    *See United States v. Polanco*, 510 F. App'x 10 (2d Cir. 2013).

permit Mr. Rodriguez to call Mr. Aguilar as a witness.  However, there is no evidence to suggest that Ms. Murray directed Mr. Dwyer's investigation beyond instructing Mr. Dwyer to limit non-investigatory time.  Beyond its lack of support, Mr. Rodriguez's contention fails to explain how Mr. Aguilar, who was eventually convicted of homicide and narcotics trafficking, would have provided testimony to undermine Mr. Medina's statements that were supported by significant evidence.[16]

Most importantly, Mr. Rodriguez's claim of interference fails because he allowed Ms. Murray to act as his trial counsel.  "Even when [a defendant] insists that he is not waiving his *Faretta* rights, a *pro se* defendant's solicitation of or acquiescence in certain types of participation by counsel substantially undermines later protestations that counsel interfered unacceptably." *Mckaskle*, 465 U.S. at 182.  Mr. Rodriguez's claims of interference are fanciful and unsupported by the record, fail to discuss Ms. Murray's efforts to provide further investigation, and do not take into account his acquiescence to her representation at trial.  Therefore, this claim is respectfully denied.

---

[16]     *See United States v. Aguilar*, 585 F.3d 652 (2d Cir. 2009).

G. **Ground Six: Failure to Challenge Third Prong of 21 U.S.C.
Section 848(e)(1)(A)**

Mr. Rodriguez's sixth claim alleges that counsel

failed to challenge the constitutionality of the third prong of

21 U.S.C. § 848(e)(1)(A).  (Pet. Mem. at 56.)  Petitioner

alleges the third prong is in contravention of the states' core

police powers to prosecute "violent crime-and murder in

particular."  (*Id.*)  Specifically, Mr. Rodriguez argues that the

court's broad and ambiguous reading of the "engaging in"

language "poses federalism concerns by raising the prospect of

virtually unrestricted federal murder liability for drug

offenders, especially those engaged in drug conspiracies."  (*Id.*

at 57-58.)  Consequently, Mr. Rodriguez argues that the law

should be changed to require the demonstration of a defendant's

primary purpose in committing the crime, beyond a "substantive

connection."  (*Id.* at 59.)  For the following reasons,

petitioner's claim is meritless.

The "third prong" of 21 U.S.C. § 848(e)(1)(A) states

in relevant part as follows:

> any person engaging in or working in furtherance of a
> continuing criminal enterprise, or any person engaging in
> an offense punishable under section 841(b)(1)(A) of this
> title or section 960(b)(1) of this title who intentionally
> kills or counsels, commands, induces, procures, or causes
> the intentional killing of an individual and such killing
> results, shall be sentenced to any term of imprisonment,
> which shall not be less than 20 years, and which may be up
> to life imprisonment, or may be sentenced to death.

21 U.S.C. § 848(e)(1)(A).[17]  In support of his assertions, Mr.

Rodriguez cites, *inter alia*, to *United States v. Morrison*, 529

U.S. 598, 618 (2000).  (*Id.* at 56.)  In *Morrison*, the Supreme

Court relied in part on Chief Justice Marshall's majority

opinion in *Cohens v. Virginia*, to find the Violence Against

Women Act of 1994 (VAWA) unconstitutional because Congress could

not regulate "noneconomic, violent criminal conduct based solely

on that conduct's aggregate effect on interstate commerce."  529

U.S. at 617-18.

However, as Mr. Rodriguez admits, Pet. Mem. at 58-59,

the Second Circuit in *United States v. Aguilar* held that the

"'substantive connection' requirement implied in the 'engaging

in' element of § 848(e)(1)(A) can be satisfied not only by proof

that at least one of the purposes of the killing was related to

an ongoing drug conspiracy, as we held in *United States v.*

*Desinor*, 525 F.3d 193, 202 (2d Cir. 2008), but also by proof

that the defendant used his position in or control over such a

conspiracy to facilitate the murder."  *United States v. Aguilar,*

585 F.3d 652, 653 (2d Cir. 2009); *see also United States v.*

*Walker*, 142 F.3d 103, 111 (2d Cir. 1998) (citing *United States*

---

[17]    The government directs the court's attention to *United States v. Hager*,
721 F.3d 167, 208 (4th Cir. 2013), and states that Mr. Rodriguez's claim
"appears to track a dissent filed by Judge Wynn in the Fourth Circuit."
(Opp. at 30 n.17.)  The majority in *Hager* rejected the petitioner's void for
vagueness arguments against 21 U.S.C. Section 848(e)(1)(A) citing, *inter
alia*, *Aguilar*, 585 F.3d at 658.  (*Hager*, 721 F.3d at 183.)

*v. Genao*, 79 F.3d 1333, 1337 (2d Cir. 1996)) (rejecting Section 848(e)(1)(A)'s post-*Lopez* constitutional challenge because there was a "reasonable finding by Congress" that local narcotics activity substantially affects interstate commerce).

Mr. Rodriguez's constitutional challenge has been previously rejected by the Second Circuit and is meritless.  As such, no prejudice could result from counsel's alleged failure to raise this argument, and the petitioner's ineffective assistance of counsel claim is denied.  *See Parker*, 666 F.3d at 834 ("for where 'it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [than on the ground of objectively unreasonable performance] . . . that course should be followed.").

## H. <u>Ground Seven: Failure to Raise Pattern of Prosecutorial Misconduct</u>

Mr. Rodriguez's final ineffective assistance claim alleges that both Mr. Gordon and Ms. Murray "totally disregarded" the pattern of prosecutorial misconduct in the federal grand jury and trial in the Eastern District of New York and other districts.  (Pet. Mem. at 61.)  This claim generalizes his previous claims, reiterates the same arguments while citing to articles regarding alleged prosecutorial and DEA misconduct in other districts, and asserts that "these cases and many, many more that have not been publish[ed] on public media . . .

clearly show the symptomatic problem with prosecutorial
misconduct and pattern that can not be denied by any attorney in
the Federal level."  (Pet. Mem. at 69.)  For the same reasons
that these claims were denied in the above discussion, *see supra*
Ground Four, Mr. Rodriguez's final claim is denied.

Mr. Rodriguez again asserts unsubstantiated
allegations that lack support, such as: "[i]t must be noted
that, although [the complainant and affidavit by the DEA Agent]
contained factual material that was false and the prosecutors .
. . knew that the statements were false, they move forward
without regard for blatant critical perjury . . . ," and "if the
grand jury transcripts are closely review [sic], you will be
able to clearly see that [the prosecutor] ask's [sic] double and
triple hearsay questions, and false and in part fabricated
testimony that he is aware is false . . . ."  (*Id.* at 65.)
Petitioner baldly asserts that the prosecutors knowingly
introduced perjured testimony to the grand jury, but fails to
specify how the testimony was inaccurate or improper.

Additionally, both Mr. Gordon and Ms. Murray state
that they were not aware of any prosecutorial misconduct that
they should have challenged.  (Gordon Aff. at 7; Murray Decl. ¶
14.)  As discussed *supra*, Mr. Rodriguez's claim of prosecutorial
misconduct has no merit.  Further, if Mr. Rodriguez seeks to
assert that Mr. Gordon and Ms. Murray should have challenged or

investigated misconduct based on general media reports of
prosecutorial misconduct in unrelated cases, this argument also
fails.[18]

While defense counsel has a "duty to make a reasonable
investigation," or reasonably determine that such an
investigation is unnecessary, no such duty was breached here.
*See Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting
*Strickland*, 466 U.S. at 690); *see also Vasquez v. United States*,
1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997) ("Petitioner's
allegations with regard to alleged counsel errors in pre-trial
preparation and investigation and trial advocacy are vague,
conclusory, and unsupported by citation to the record, any
affidavit, or any other source, and, accordingly, the vague and
unsubstantiated nature of the claims defeated petitioner's claim
of ineffective assistance of counsel") (brackets, internal
quotation marks, and ellipses omitted).  As Mr. Rodriguez fails
to show either deficient performance or prejudice from Mr.

---

[18]    Mr. Rodriguez appends several articles regarding misconduct in other
states, by the DEA, FBI, or by county prosecutors.  (*See* Exhibit 5-B, at 84-
97, 05-cr-00153, ECF No. 1-4).  Even assuming that these articles could be
relevant to his *habeas* petition, these articles do not speak to any of the
parties involved or even the United States Attorney's Office for the Eastern
District of New York.

Gordon and Ms. Murray not raising this claim, his claim is
denied.

## IV.  Motions for Disqualification, Disclosure, and Discovery

The court next considers Mr. Rodriguez's (1) motion
for disqualification of five AUSAs and/or the United States
Attorney's Office for the Eastern District of New York; and (2)
motions for disclosure and discovery of grand jury transcripts,
court logs, tape recordings of phone calls, polygraph results,
complaints against Special Agent Iula, and complaints against
two AUSAs.  For the following reasons, these motions are without
merit and are respectfully denied.

### A. Motion for Disqualification

Mr. Rodriguez moves to disqualify the U.S. Attorney's
Office for the Eastern District of New York and, specifically,
AUSAs Carrie N. Capwell, Robert Lloyd Capers, Scott Klugman,
Michele Adelman, and Licha M. Nyiendo.  (Disqualify Mot. at 2.)
Petitioner seeks to disqualify the U.S. Attorney's Office to
"avoid an appearance or occurrence of impropriety" as he
"asserts particular bad faith and unethical conduct," and to
depose the individual AUSAs at an evidentiary hearing in support
of an allegation of prosecutorial misconduct against former AUSA
Max Justin Minzner.  (*Id.* at 3-6.)

Petitioner's claim alleging prosecutorial misconduct
fails for two reasons.  First, this court has already held that

petitioner's ineffective assistance of counsel claims based on prosecutorial misconduct are conclusory, unsupported by the record, and without merit, and may be dismissed on this ground alone.  (*See supra*, Ground Seven.)  Second, petitioner's claims are also unsupported by the law.

Petitioner's motion to disqualify the U.S. Attorney's Office for the Eastern District of New York is without merit. "An entire U.S. Attorney's Office should only be disqualified, if ever, when special circumstances demonstrate the interest of justice could only be advanced by this drastic remedy." *United States v. Basciano*, 763 F. Supp. 2d 303, 314 (E.D.N.Y. 2011). "'Every circuit that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification.'" (*Id.* at 313 (quoting *United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003).)  As petitioner presents no facts that support his contention that, without disqualification there will be impropriety, the court denies his motion to disqualify the U.S. Attorney's Office for the Eastern District to oppose his Section 2255 petition. *See United States v. Callahan*, 2020 WL 108542, at *11 (E.D.N.Y. Jan. 9, 2020) (denying disqualification of the United States Attorney's Office for the Eastern District of New York to oppose petitioner's Section 2255 petition).

Next, petitioner's motion to disqualify the five AUSAs is also without merit.  In his *pro se* motion, petitioner makes several conclusory allegations suggesting that the personal knowledge of these five prosecutors will be valuable for his claims alleging the prosecutorial misconduct of AUSA Max Minzner.  This court has already ruled that a "full-blown" testimonial hearing is not necessary, that the submitted record is sufficient to consider the merits of Mr. Rodriguez's ineffective assistance claim with regard to any alleged prosecutorial misconduct by AUSA Minzner, and that petitioner has alleged no new facts to support his collateral attack.  (*See supra*, Ground Four.)

### B. <u>Motion for Disclosure and Discovery</u>

On February 25, 2015, Mr. Rodriguez filed a motion for disclosure of the grand jury transcripts and court logs pursuant to 28 U.S.C. § 2250 and 28 U.S.C. § 753(f), alleging that the documents will be needed to make a "complete and informed" defense to support his assertion of prosecutorial misconduct. (Disclosure Mot. at 2-4.)  On March 10, 2015, Mr. Rodriguez filed a motion for discovery for a myriad of items including, *inter alia*, grand jury transcripts, court logs of the grand jury, tape recordings, any complaints against AUSA Max Justin Minzner, any complaints against AUSA Robert Capers, complaints

against Special Agent Iula, and any polygraph results of cooperating witness Carlos Medina.  (Discovery Mot. at 12-16.)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). To grant the discovery motion, Mr. Rodriguez must "first demonstrate 'good cause' to request the materials by making 'specific allegations . . . showing reason to believe that . . . he may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Locurto v. United States*, 2016 WL 7031556, at *1 (E.D.N.Y. Dec. 1, 2016) (brackets omitted) (quoting *Bracy*, 520 U.S. at 908-09); *see also Lewal v. United States*, F.3d 919, 1998 WL 425877 at *2 (2d Cir. 1998) ("Rule 6(a) of the Rules Governing Section 2255 Proceedings . . . provides that a § 2255 petitioner is entitled to undertake discovery only when 'the judge in the exercise of his [or her] discretion and for good cause shown grants leave to do so, but not otherwise.'").

The petitioner "bears a heavy burden in establishing a right to discovery." *Renis v. Thomas*, 2003 WL 22358799, at *2 (S.D.N.Y. Oct. 16, 2003) (citing *Bracy*, 520 U.S. at 904).  In order to show "good cause," a petitioner must present "specific allegations" that give the court "reason to believe that the petitioner may, if the facts are fully developed, be able to

demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also Naranjo v. United States*, 2019 WL 4879297, at *1 (S.D.N.Y. Oct. 3, 2019).

Petitioner's records request concerns the prosecutorial misconduct claim the court has already deemed meritless. (*See supra*, *e.g.*, Ground Four.) "Rule 6 does not license a petitioner to engage in a 'fishing expedition' by seeking documents 'merely to determine whether the requested items contain any grounds that might support his petition, and not because the documents actually advance his claims of error.'" *Ruine v.* Walsh, 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) (quoting *Charles v. Artuz*, 21 F. Supp. 2d 168, 169 (E.D.N.Y. 1998)). The court may deny a request for discovery "where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition." *Hirschfeld v. Comm'r of the Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y. 2003) (citing *Gonzalez v. Bennett*, 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001)); *see also Pizzuti v. United* States, 2017 WL 1180911, at *6 (S.D.N.Y. Mar. 29, 2017) ("Generalized statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite 'good cause.'"); *United States v. Vaughan*, 2010 WL 3025648, at *3 (S.D.N.Y. July 27, 2010) (quoting *United States*

*v. Wilson*, 565 F. Supp. 1416, 1436 (S.D.N.Y. 1983)).)

("'Speculation and surmise as to what occurred before the grand

jury is not a substitute for fact.'")

As petitioner's requests are without merit, and

further discovery could not bolster the ineffective assistance

claims raised in his petition, the court finds that Mr.

Rodriguez has not met his "heavy burden" to show good cause with

his conclusory statements in both his motions for disclosure and

discovery.  Therefore, petitioner's motions are respectfully

denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Rodriguez's petition

for a writ of *habeas corpus* is DENIED in its entirety.  Mr.

Rodriguez's claims of ineffective assistance of counsel are not

supported by the record and are meritless.  Further, Mr.

Rodriguez's motions to amend his petition are DENIED due to

their futility; his motion for disqualification is DENIED; and

his motions for discovery and disclosure are DENIED.  A

certificate of appealability shall not issue because Mr.

Rodriguez has not made a substantial showing of the denial of a

constitutional right.  28 U.S.C. § 2253(c)(2).

The clerk is respectfully directed to enter judgment

in favor of respondent, close this case, and send a copy of this

Memorandum and Order and the judgment to the petitioner at his last known address and note service on the docket.

**SO ORDERED.**

Dated:      December 31, 2020
            Brooklyn, New York

                                        _____/s/_____
                                        Hon. Kiyo A. Matsumoto
                                        United States District Judge